IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

DANIEL GRAJALES, *et al.*,

**Plaintiffs,**

v.

PUERTO RICO PORTS AUTHORITY, *et al.*,

**Defendants.**

CIVIL NO. 09-2075 (FAB)

## OPINION AND ORDER

BESOSA, District Judge.

Before the Court is defendant Puerto Rico Ports Authority's motion for summary judgment.  (Docket No. 186.)  Having considered the motion and plaintiffs' response, (Docket No. 206), the Court **DENIES** defendant PRPA's motion.

### DISCUSSION

### I.   Procedural Background

On October 16, 2009, plaintiff Daniel Grajales ("Grajales"), his wife Wanda Gonzalez, and their conjugal partnership[1] filed a complaint against the defendants.  (Docket No. 1.)  The complaint included a general claim for civil rights violations pursuant to 42 U.S.C. sections 1983 ("section 1983") and 1985 ("section 1985"), Title VII of the Civil Rights Act ("Title VII"), state claims for

---

[1] Because Grajales' wife's and children's claims are wholly derivative, the Court will refer to Grajales as if he were the only plaintiff.

damages under the laws of the Commonwealth of Puerto Rico, and
Puerto Rico Law No. 100 for alleged discrimination.  Id.  Plaintiff
Grajales filed an amended complaint pursuant to a court order on
February 26, 2010.  (Docket No. 31.)  He filed a second amended
complaint on September 27, 2010.  (Docket No. 66.)  The second
amended complaint included as defendants the Puerto Rico Ports
Authority ("PRPA"), a public corporation, and Alvaro Pilar-Vilagran
("Pilar"), the then Executive Director of the PRPA, Miguel Alcover-
Colon ("Alcover"), an internal security officer of Aguadilla
Airport and one of plaintiff's subordinates; Elmer Emeric-Oliver
("Emeric"), the Director of General Security at the PRPA; Gonzalo
Gonzalez-Santini ("Gonzalez"), the manager of the Aguadilla
airport; Carlos Travieso ("Travieso"), the acting security
supervisor of Aguadilla Airport; among others, in their official
and personal capacities (collectively, "defendants").  (Docket
No. 66.)  Plaintiff Grajales argues that defendants subjected him
to political discrimination through a variety of occurrences.  Id.
On August 31, 2012, plaintiff Grajales filed a third amended
complaint.  (Docket No. 146.)  In the third amended complaint, he
added a wrongful termination claim against defendant PRPA and added
his minor children, ZGG, DGG, and CGG as plaintiffs in the suit for
damages under Puerto Rico law.  See id.

On October 30, 2012, the parties stipulated that plaintiff's complaint against the individually named defendants in their personal capacity be dismissed with prejudice. (Docket No. 177.) On that same date, the Court dismissed the claims against Pilar, Travieso, Emeric, Gonzalez, and Alcover in their personal capacities with prejudice. (Docket No. 178.)

On November 30, 2012, defendant PRPA filed two motions for summary judgment. (Docket Nos. 184 and 186.) The first motion for summary judgment (Docket No. 184) argues that the doctrines of *res judicata*,[2] collateral estoppel, and fragmentation estoppel apply to this case, and therefore, the case should be dismissed. <u>Id.</u> On February 13, 2013, the Court denied defendant PRPA's first motion for summary judgment. (Docket No. 247.)

In its second motion for summary judgment, (Docket No. 186), defendant PRPA argues that plaintiff Grajales lacks evidence to show actionable political discrimination. Therefore, defendant PRPA requests that the Court dismiss plaintiff's third amended complaint with prejudice. On December 28, 2012, plaintiff Grajales opposed defendant PRPA's second motion for summary judgment.

---

[2] *Res Judicata* is an affirmative defense that must be alleged when a party responds to a pleading. Fed.R.Civ.P. 8(c)(1). In its answer to plaintiff's third amended complaint, defendant PRPA alleges that plaintiff's claims are precluded by the doctrine of *res judicata*. (Docket No. 173 at pp. 8-9.) It reiterates these claims in its motion for summary judgment. (Docket No. 184.)

(Docket No. 206.)   Both parties also filed attachments and certified translations of certain documents to support their arguments.  (See Docket Nos. 186, 196, 206, 207, and 219.)

On February 15, 2013, the Court dismissed the claims against defendants Emeric, Gonzalez, Alcover, and Pilar in their official capacities.   (Docket No. 259.)   The Court also dismissed plaintiff's Title VII claim against PRPA with prejudice.  Id.  Only plaintiff's claims against defendant PRPA and defendant Travieso in his official capacity remain.  The Court will address defendant PRPA's motion for summary judgment regarding these two defendants.

For the reasons discussed, the Court **DENIES** defendant PRPA's motion for summary judgment.

## II.   Summary Judgment Standard

The Court may grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).  A fact is "material" if it has the potential to "affect the outcome of the suit under the governing law."  Id. A dispute is "genuine" when it "could be resolved in favor of either party."  Calero-Cerezo v. U.S. Dep't. of Justice, 355 F.3d 6, 19 (1st Cir. 2004).

The party moving for summary judgment has the initial burden of "demonstrat[ing] the absence of a genuine issue of material

fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The party must demonstrate this absence with definite and competent evidence. See Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994).  It must identify "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any'" which support its motion. Id. (citing Fed.R.Civ.P. 56(c)).  Once a properly supported motion has been presented, the burden shifts to the non-moving party "to demonstrate that a trier of fact reasonably could find in [its] favor." Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000) (internal citation omitted).

     If the non-moving party establishes uncertainty as to the "true state of any material fact, the movant's efforts should be deemed unavailing." See Lopez & Medina Corp. v. Marsh USA, Inc., 694 F.Supp.2d 119, 123 (D.P.R. 2010) (citing Suarez v. Pueblo Int'l., 229 F.3d 49, 53 (1st Cir. 2000)).  It is well-settled that "[t]he mere existence of a scintilla of evidence" is insufficient to defeat a properly supported motion for summary judgment. Anderson, 477 U.S. at 252.  It is therefore necessary that "a party opposing summary judgment must 'present definite, competent evidence to rebut the motion.'" Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994) (internal citation omitted).  In making this assessment, the Court must take

the entire record in the light most favorable to the nonmoving
party and draw all reasonable inferences in its favor.  Farmers
Ins. Exch. v. RNK, Inc., 632 F.3d 777, 779-80 (1st Cir. 2011).  The
Court does not, however, "make credibility determinations or weigh
the evidence."  Anderson, 477 U.S. at 255.  The Court may safely
ignore, however, "conclusory allegations, improbable inferences,
acrimonious invective, or rank speculation."  Ahern v. Shinseki,
629 F.3d 49, 54 (1st Cir. 2010).

       The First Circuit Court of Appeals has "repeatedly . . .
emphasized the importance of local rules similar to Local Rule 56
[of the District of Puerto Rico]."  Hernandez v. Phillip Morris
USA, Inc., 486 F.3d 1, 7 (1st Cir. 2007).  Rules such as Local
Rule 56 "are designed to function as a means of 'focusing a
district court's attention on what is - and what is not - genuinely
controverted.'"  Id. (quoting Calvi v. Knox County, 470 F.3d 422,
427 (1st Cir. 2006)).  Local Rule 56 imposes guidelines for both
the movant and the party opposing summary judgment.  Loc. Rule 56.
A party moving for summary judgment must submit factual assertions
in "a separate, short, and concise statement of material facts, set
forth in numbered paragraphs."  Loc. Rule 56(b).  A party opposing
a motion for summary judgment must "admit, deny, or qualify the
facts supporting the motion for summary judgment by reference to
each numbered paragraph of the moving party's statement of facts."

Loc. Rule 56(c).  Facts which are properly supported "by record citations as required by this rule, shall be deemed admitted unless properly controverted."  Loc. Rule 56(e).  The Court may, however, "disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment."  Loc. Rule 56(e).  "The court shall have no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of facts."  Due to the importance of this function to the summary judgment process, "litigants ignore [those rules] at their peril."  Hernandez, 486 F.3d at 7.

**III. Undisputed Facts**

     In addition to defendant PRPA's motion for summary judgment and plaintiff's response, (Docket Nos. 184 and 186), both parties filed redacted parts of documents and depositions, (see Docket Nos. 196, 206 and 207).  Some of the exhibits, however, were filed only in Spanish without any certified English translations pursuant to Local Rule 5(g), which requires that "[a]ll documents not in the English language which are presented or filed, whether as evidence or otherwise, must be accompanied by a certified translation in English prepared by an interpreter certified by the Administrative Office of the United States Courts."  See also 48 U.S.C. § 864 ("All pleadings and proceedings in the United States District Court

for the District of Puerto Rico shall be conducted in the English language.")   Other exhibits were cited incorrectly and misrepresented.   Therefore, any fact that was improperly cited, misrepresented, or only supported by documents in Spanish have not been considered, and are not included in the factual background below.  Loc. Rule 56(e); P.R. Am. Ins. Co. v. Rivera-Vazquez, 603 F.3d 125, 130 (1st Cir. 2010) (Facts which are properly supported "shall be deemed admitted unless properly controverted.") Additionally, defendant PRPA failed to address plaintiff Grajales' counter statement of undisputed facts.  (See Docket No. 206-1 at pp. 6-7).  Any properly cited and supported facts contained in that statement are included below.

On May 20, 2011, plaintiff Grajales received a termination letter, which dismissed him from his employment at defendant PRPA. (Docket No. 184-2.)   The letter was signed by then Executive Director Escudero.   Id.   At the time, plaintiff Grajales was a security supervisor at the Aguadilla airport.  Id.  Escudero stated that he signed the letter based on the report recommending Grajales' termination issued by Official Examiner Luisa Torres after a hearing held before her.  (Docket No. 186-20 at p. 1.)  The report stated that plaintiff Grajales had acted with insubordination, and Examiner Torres found that the behavior warranted dismissal.  (Docket No. 186-21 at p. 12.)  Defendant PRPA

does not contest plaintiff's statement that, after a hearing with defendant PRPA, the Department of Labor found him eligible for unemployment benefits.  (Docket No. 206-2 at p. 40.)  Plaintiff also stated that the Department of Labor determined that he was eligible because there was a lack of insubordination to support his termination.  (Docket No. 206-2 at p. 40.)  Horacio Gilot-Melendez ("Gilot"), a retired employee of the PRPA's Internal Security Bureau, indicated that because the New Progressive Party ("PNP") took over in 2009, members of the PNP have "carried out a routine practice at the PRPA of harassing and discriminating against PDP supporters," including people like Grajales.  (Docket No. 206-2 at p. 45.)

On March 13, 2012, plaintiff's attorney wrote an extrajudicial letter to defendant PRPA, which had a tolling effect on the one-year statute of limitations for plaintiff's cause of action.  (See Docket Nos. 142-1, 145, and 184-2.)

Plaintiff Grajales indicates that while he is not affiliated with any particular political party, his beliefs align with the Popular Democratic Party ("PDP").  (Docket Nos. 206-1 and 207-1 at ¶ 7.)  He also indicated that he never changed political parties to the PNP and that he was never forced to change his affiliation. (Docket Nos. 206-1 and 207-1 at ¶ 8.)

Plaintiff Grajales testified at his deposition that he did not know Gonzalez's or Pilar's political affiliation either when he was dismissed or when he was deposed.  (Docket No. 207-1 at p. 3.)  He also stated that Emeric is a member of the PNP because Emeric had a trust position[3] with the administration.  (Docket No. 207-1 at p. 2.)  Gonzalez testified that he did not know the political affiliation of plaintiff Grajales but that his own affiliation was with the PDP.  (Docket No. 207-1 at pp. 8-9.)

The first time that Pilar,[4] then Executive Director of the PRPA, visited the Aguadilla airport, he witnessed a heated discussion between Gonzalez and plaintiff Grajales, during which they raised their voices at each other.  (Docket No. 219-2 at p. 19.)  On May 15, 2009, Gonzalez submitted a letter to Pilar, regarding an alleged verbal altercation between Gonzalez and

---

[3] Puerto Rico government positions are classified as either "career" or "trust" positions.  Costa-Urena v. Segarra, 590 F.3d 18, 22 (1st Cir. 2009).  "Trust" employees participate in policymaking and are "freely subject to removal from [their position[s] . . ." on political grounds.  Maymi v. P.R. Ports Auth., 515 F.3d 20, 26-27 (1st Cir. 2008); see also Costa-Urena, 590 F.3d at 22.  "Career" employees can only be selected and terminated based on merit, not politics, and terminated for just cause.  Costa-Urena, 590 F.3d at 22.

[4] Pilar was an appointee of the PNP administration and served as PRPA's Executive Director until about May 2010, when he resigned.  (Docket No. 196-9 at p. 1.)

plaintiff Grajales.  (Docket No. 196-1 at p. 1.)  In the letter,
Gonzalez requested that the incident be investigated.  Id.

Pilar stated that he dealt with another complaint in which
plaintiff Grajales and Alcover had a strong argument in the parking
lot.  (Docket Nos. 196-4 and 196-7 at p. 1.)  Alcover was a
subordinate of plaintiff Grajales.  (Docket No. 186-12 at ¶ 3.)
Alcover filed a suit for libel and slander in the Puerto Rico Court
of First Instance, Aguadilla Division, at the behest of his
supervisor, Manuel Villazan ("Villazan").  Id. at ¶ 9.  The
Aguadilla court issued a judgment and dismissed the claims against
Grajales.  Id. at ¶ 8.

Pilar decided that "[Grajales] could not work with the persons
in Aguadilla" because of personality and character problems.
(Docket Nos. 196-4 and 196-8 at p. 1.)  Specifically, Pilar
mentioned the incident with Gonzalez and the "public screaming"
that Grajales engaged in with his subordinates, like Alcover.
(Docket No. 196-4 at p. 1.)  Therefore, he stated that he decided
to transfer Gonzalez to handle the Mayaguez and Arecibo airports,
and plaintiff Grajales to the nearest airport "regulated by [the]
TSA," which was the Ponce airport.  (Docket No. 196-5 at pp. 21-
22.)

During the time surrounding these incidents, plaintiff
Grajales' firearm privileges were also suspended.  It is unclear as

to why he was disarmed and who gave that order. (Docket Nos. 186-1 and 206-1 at ¶ 16; Docket No. 196-7 at p. 1; Docket No. 206-3 at pp. 2-3.) Pilar said that he decided to disarm plaintiff Grajales because he believed that Grajales had shown aggressiveness and violence against his fellow workers. (Docket No. 196-6 at p. 1; Docket No. 196-7 at p. 1.) For example, Pilar stated that still another altercation with Alcover in the airport had occurred. (Docket No. 196-7 at p. 1.) Emeric stated, however, that he was the one who disarmed Grajales because Grajales was on medication to threat his depression. (Docket No. 206-3 at pp. 2-3.) Emeric stated that no efforts were made to interview Grajales' treating physician or the physician who prescribed the medication to him. (Docket No. 206-3 at pp. 2-3.)

Plaintiff Grajales indicated that while Alcover and defendant Travieso were his subordinates, they both filed complaints about Grajales with his supervisors. (Docket No. 186-12 at p. 2; Docket No. 206-2 at p. 22; Docket No. 206-4 at p. 9; Docket No. 196-10 at pp. 1-2.) For example, Roberto Ramos-Cruz ("Ramos"), a PRPA Internal Affairs Officer, performed an investigation in either 2008 or 2009 about Grajales' attendance record. (Docket No. 206-4 at pp. 3, 7-8, 10-11.) The investigation was performed due to a tip from an anonymous hotline but Ramos was able to determine that Alcover requested the investigation. Id. at pp. 8-9. As part of

his investigation, Ramos established a surveillance of Grajales and interviewed other PRPA employees.  Id. at pp. 4 and 10.  During his investigation, Ramos interviewed defendant Travieso and Alcover. Id. at p. 4.  Defendants Travieso and Alcover indicated to Ramos that they were better candidates for plaintiff Grajales' appointed position but that Grajales received the position as a favor during the PDP administration.  Id. at pp. 4-6.

Grajales indicated that Alcover also took photographs of his home and made copies of his attendance sheet to send to the Office of Internal Affairs.  (Docket No. 206-2 at p. 22.)  Grajales also stated that defendant Travieso followed him and videoed him in his vehicle while he was on official business.  Id. at p. 23.  Grajales stated that Travieso showed the video to other PRPA employees, boasting that he would get Grajales fired and that he was "going to fuck him up, because he's [PDP]."  Id.  Grajales then indicated that Villazan then took the video to Villazan's supervisor, Fernando Diaz-Ramirez.  Id. at p. 24.  Villazan allegedly indicated that the video was taken by a citizen and shows that Grajales was driving negligently.  Id.  Alcover also knew that defendant Travieso had taken the video and that Villazan decided not to take the incident further to an administrative investigation.  (Docket No. 206-4 at p. 2.)  Grajales stated that he complained to Pilar in

2009 about this behavior and Pilar's response was to transfer Grajales from the Aguadilla airport.  (Docket No. 206-2 at p. 25.)

**IV.   Defendant's Motion for Summary Judgment**

 **A.   Section 1983 Claim for Relief**

  For a section 1983 action, the First Circuit Court of Appeals has indicated that a plaintiff must show that (1) a person, (2) acting under the color of state law,[5] (3) deprived plaintiff of a federally protected right.  <u>Elena v. Municipality of San Juan</u>, 677 F.3d 1, 6 (1st Cir. 2012); <u>see also</u> <u>Soto-Padro v. Public Bldgs. Auth. February 20, 2013</u>, 675 F.3d 1, 4 (1st Cir. 2012).  Neither plaintiff nor defendant PRPA has made any argument whether these requirements have been met.  Therefore, the Court assumes that these requirements are met.  <u>See</u> <u>Soto-Padro</u>, 675 F.3d at 4 n. 4 (assuming that plaintiff met the requirements of section 1983 because the parties make that assumption in their briefs to the court).  Even if the parties did argue that a claim for relief can be shown pursuant to section 1983, the only element that could be disputed is the first element:  whether defendant PRPA is a "person" that can be sued pursuant to section 1983.  The Court finds that even if this argument had been made, it would have

_____

 [5] "For purposes of section 1983, Puerto Rico is 'deemed equivalent to a state.'"  <u>Elena</u>, 677 F.3d at 6 n. 5 (quoting <u>Deniz v. Municipality of Guaynabo</u>, 285 F.3d 142, 146 (1st Cir. 2002)).

failed, and that defendant PRPA can be sued as a "person" pursuant to section 1983.  Cf. Orrina-Medina v. Metropolitan Bus Auth., 565 F.Supp.2d 285, 301-02 (D.P.R. 2007) (discussing how the Puerto Rico Metropolitan Bus Authority, a public corporation that is similar in creation and governance to the PRPA, is susceptible to suit under section 1983).  Therefore, the Court finds that defendant PRPA can be sued pursuant to section 1983.

**B.   Political Discrimination Under the First Amendment**

To establish a *prima facie* case of political discrimination, the plaintiff must show "(1) that the plaintiff and defendant belong to opposing political affiliations; (2) that the defendant has knowledge of the plaintiff's affiliation; (3) that an adverse employment action occurred, and (4) that political affiliation was a substantial or motivating factor for the adverse employment action."  Torres-Santiago v. Municipality of Adjuntas, 693 F.3d 230, 236 (1st Cir. 2012).

"But even if a jury could reasonably conclude from the summary-judgment evidence that plaintiff's political affiliation was a substantial or motivating factor in [defendant's] decisional calculus, [plaintiff] still would not be home free."  Soto-Padro, 675 F.3d at 6.  The defendant can still prevail on summary judgment by "showing that no sensible jury would reject their defense that they would have taken the same action against him 'in the absence

of the protected conduct.'"   Id. (internal citations omitted).

This is known as a Mt. Healthy defense.[6]

Defendant PRPA's motion for summary judgment contains only a few sentences discussing element one, whether the plaintiff and defendant belong to opposing political affiliations, and fails to address at all the second element of whether the PRPA had knowledge of plaintiff's affiliations.  (Docket No. 186 at p. 16.) Therefore, any argument regarding those two elements is waived. U.S. v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) (holding that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.")  The PRPA focuses on elements three and four:  whether an adverse employment action occurred and whether political affiliation was a substantial or motivating factor for the adverse employment action.  Therefore, the Court will focus its discussion on elements three and four.

---

[6] While defendant PRPA sets out the applicable standard for a Mt. Healthy defense in its motion for summary judgment, (Docket No. 186 at p. 12), it fails to advance any argument regarding the defense.  Instead, it argues only that plaintiff fails to establish a *prima facie* case.  (See Docket No. 186.)  Therefore, the Court will focus only on defendant PRPA's arguments regarding plaintiff's *prima facie* case.  See Rodriguez v. Municipality of San Juan 659 F.3d 168, 178 (1st Cir. 2011) (declining to "say anything more" about a Mt. Healthy defense when defendants have not advanced any arguments about it).

### 1.   Opposing Political Affiliations

Defendant PRPA cursorily argues that the PRPA itself is a public corporation that cannot vote and cannot have a political affiliation. (Docket No. 186 at p. 16.) While this may be true, the PRPA admits, however, that the officers of the PRPA are responsible for the alleged actions against plaintiff and it is the PRPA employees' political affiliations that the Court must examine. Id. Plaintiff Grajales presented uncontested testimony from at least one other employee indicating that since the PNP took over in 2009, members of the PNP at the PRPA knew about Grajales' political affiliation, and "carried out a routine practice at the PRPA of harassing and discriminating" against him and other PDP members. (Docket No. 206-2 at p. 45.) Defendant PRPA fails to dispute or present any definite evidence that some of the employees who were involved in the alleged adverse employment actions contained opposing affiliations from the plaintiff and knew about the plaintiff's affiliation. Reading the facts in a light most favorable to the plaintiff, the Court finds defendant PRPA fails to demonstrate an absence of a genuine issue of material fact with regard to the first two elements.

### 2. Political Affiliation as a Substantial or Motivating Factor for the Adverse Employment Action

For First Amendment purposes, an adverse employment action occurs "if those actions, objectively evaluated, would place substantial pressure on even one of thick skin to conform to the prevailing political view." Rodriguez-Garcia v. Miranda-Marin, 610 F.3d 65, 66 (1st Cir. 2010) (internal citations omitted). Generally, discharging or demoting an employee, denying promotions and transfers, and failing to recall a public employee after layoffs constitute adverse employment actions. Id. A "substantial alteration in an employee's job responsibilities" may also constitute an adverse employment action. Bergeron, 560 F.3d at 8 (internal citation omitted). A denial of "special benefits and assignments" that normally come with a job may also suffice. Id. A court may also find an adverse employment action when the plaintiff is confronted with "a work situation unreasonably inferior to the norm for the position." Rodriguez-Garcia, 610 F.3d at 766 (internal citations and punctuation omitted). Even "informal harassment, as opposed to formal employment actions . . . can be the basis for the [F]irst [A]mendment claims *if the motive was political discrimination*; but this is so only if the discriminatory acts are '*sufficiently severe* to cause reasonably hardy individuals to compromise their political beliefs and

associations in favor of the prevailing party.'" Cordero-Suarez v. Rodriguez, 689 F.3d 77, 82 (1st Cir. 2012) (internal citations omitted) (emphasis added); see also Carrasquillo-Gonzalez v. Sagardia-de Jesus, 723 F.Supp.2d 428, 435 (D.P.R. 2010) (quoting Agosto-de Feliciano v. Aponte-Roque, 889 F.2d 1809, 1219 (1st Cir. 1989) (discussing how courts consider "additional factors such as 'lost access to telephone and photocopier, poorer office accoutrements, worse hours'" when determining whether an adverse action occurred)).    Furthermore, a "substantial campaign of harassment, instigated or knowingly tolerated by superiors" can form the basis for a section 1983 claim. Welch v. Ciampa, 542 F.3d 927, 937 (1st Cir. 2008) (citing Rosario-Urdaz v. Velazco, 433 F.3d 174, 179 (1st Cir. 2006)).

          With regards to element three, the Court discerns four actions that can be considered adverse employment actions from the parties' filings.  First, there was the incident with defendant Travieso, who allegedly filmed plaintiff Grajales and showed the video to other PRPA employeese to prove that Grajales was driving negligently.  Next, after this video incident and other incidents with co-workers, Grajales was transferred from Aguadilla airport to the Ponce airport, which is located much further away from his home.  Third, plaintiff provides evidence that his firearm was

taken away from him.  Finally, defendant PRPA fired plaintiff from his position.

The Court finds defendant PRPA's arguments regarding elements three and four unavailing, and that there is a genuine dispute of material fact about whether the adverse employment actions were substantially motivated by political affiliation.

### a.   Defendant Travieso

Plaintiff Grajales has provided evidence of one particular politically-charged statement by defendant Travieso.  To be sure, "a single insult by a co-worker with no supervisory power is not political discrimination by one exercising official authority."  <u>Rosario-Urdaz</u>, 433 F.3d at 179.  With regards to defendant Travieso, there was more than just a single insult of "I'm going to fuck you up because you are [PDP]."  After defendant Travieso made this political comment, he then followed plaintiff, filmed plaintiff's driving, and showed the video to others.  Next, defendant Travieso lied about the video and indicated that a concerned citizen took it.  Furthermore, defendant Travieso has indicated to Ramos, a PRPA Internal Affairs Officer, how he did not like that plaintiff Grajales received an appointment under the PDP administration as a favor.  These incidents can certainly be considered as an adverse employment action because plaintiff has been confronted with "a work situation unreasonably inferior to the

norm for the position." Rodriguez-Garcia, 610 F.3d at 766 (internal citations and punctuation omitted). Thus, a trier of fact who is examining this video incident and the politically-charged comments "reasonably could find in [plaintiff's] favor" regarding whether or not defendant Travieso's actions constituted an adverse employment action that was substantially motivated by political affiliation. Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000) (internal citation omitted).

### b.    Defendant PRPA

Taken as a whole, these actions are certainly severe enough to be actionable against PRPA as well. See id. at 179-80 (discussing how, sometimes, a campaign of harassment "can be inferred from parallel or interrelated actions"). Defendant PRPA argues that only the transfer to Ponce can be considered as an adverse employment action. (Docket No. 186 at p. 24.) The Court disagrees. Not only was plaintiff Grajales denied use of his firearm, which is a special benefit normally associated with his job, but he has provided evidence to show that he was subjected to other conditions "unreasonably inferior to the norm" for someone in his position. Rodriguez-Garcia, 610 F.3d at 766. For example, it is uncontested that plaintiff Grajales complained about the video incident and other incidents of political discrimination to Executive Director Pilar to no avail. Therefore, defendant PRPA

fails to show that there is no genuine dispute regarding the
adverse employment action element of a political discrimination
claim pursuant to the First Amendment.

          Defendant PRPA's argument that there is no
genuine dispute  regarding whether political affiliation was a
substantial and motivating factor for the adverse employment
actions also fails.  The First Circuit Court of Appeals has
emphasized that "it is rare that a 'smoking gun' will be found in
a political discrimination case, and thus circumstantial evidence
alone may support a finding of political discrimination." Lamboy-
Ortiz v. Ortiz-Velez, 630 F.3d 228, 240 (1st Cir. 2010) (internal
citations omitted).  Again, the actions taken as a whole shows that
the officers at PRPA condoned several politically-motivated
actions. See e.g., Rodriquez v. Municipality of San Juan, 659 F.
3d 168, 178 (1st Cir. 2011) (discussing how a court can find
political affiliation as a substantial or motivating factor for an
adverse employment action by drawing inferences from the context of
a multitude of facts at the summary judgment stage).  For example,
defendant PRPA argues that Pilar's failure to follow up with these
requests is just mere negligence.  The circumstances show, however,
that Pilar and other PRPA officers may have actively ignored
plaintiff Grajales' multiple requests to take a closer look at the
incidences of political discrimination.  Instead, Pilar's response

was to transfer Grajales to the Ponce airport, and Gonzalez to
Arecibo. But, the PRPA responded to other employees' requests for
an investigation into Grajales. Furthermore, defendant PRPA
cursorily argues that it had valid reasons other than political
affiliation for taking away plaintiff's firearm but has not
presented "definite and competent evidence" about why this was done
or who authorized the taking away of his firearm. See Maldonado-
Denis v. Castillo Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994).
Finally, defendant PRPA argues that plaintiff Grajales was fired
for being insubordinate, (Docket No. 186 at pp. 20-21), but does
not contest plaintiff Grajales' statement that after a hearing with
defendant PRPA, the Puerto Rico Department of Labor determined that
defendant PRPA was unable to prove plaintiff Grajales'
insubordination, (Docket No. 206-2 at p. 40.) Furthermore, the
Puerto Rico Department of Labor determined that Grajales was
qualified for unemployment benefits. Id. Thus, the Court
disagrees with defendant PRPA and finds that a reasonable fact
finder could find that plaintiff has established that political
affiliation was a substantial and motivating factor for the adverse
employment actions taken against plaintiff Grajales.

        Reading the summary judgment evidence in a
light that is most favorable to the nonmoving party, plaintiff

Grajales, the Court **DENIES** defendant PRPA's motion for summary judgment.

## V.   Plaintiff's Section 1985 Action

Section 1985 allows a plaintiff to sue defendants for conspiring "to deprive others 'of the equal protection of the laws, or of the equal privileges and immunities under the law . . . . " Soto-Padro, 675 F.3d at 4 (citing 42 U.S.C. § 1985(3)). Section 1985 requires plaintiff to establish: (1) "a conspiracy," (2) "a conspiratorial purpose to deprive the plaintiff of the equal protection of the laws," (3) "an overt act in furtherance of the conspiracy," and (4) either (a) an "injury to person or property" or (b) "a deprivation of a constitutionally protected right." Id. (citing Perez-Sanchez v. Pub. Bldg. Auth., 531 F.3d 104, 107 (1st Cir. 2008)). That claim, however, "requires some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." Id. (internal citations and quotation marks omitted). The First Circuit Court of Appeals has held consistently that section 1985 does not offer a remedy for discrimination based on political affiliation. Id. (internal citation omitted). Like the plaintiff in Soto-Padro, who "makes no effort to explain how his case comes within section 1985's sweep," plaintiff Grajales also fails to explain how section 1985 applies

to his cases.  Id.  Therefore, he has waived his claim with regard to section 1985 and it is **DISMISSED, with prejudice.**

### CONCLUSION

For the reasons expressed, the Court **DENIES** defendant PRPA's motion for summary judgment.

**IT IS SO ORDERED**.

San Juan, Puerto Rico, February 21, 2013.

                                   s/ Francisco A. Besosa
                                   FRANCISCO A. BESOSA
                                   UNITED STATES DISTRICT JUDGE