IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **DANIEL GRAJALES, et al.,** <br><br> **Plaintiffs,** <br><br> v. <br><br> **PUERTO RICO PORTS AUTHORITY, et al.,** <br><br> **Defendants.** | **CIVIL NO. 09-2075 (PAD)** |

**OPINION AND ORDER**

Delgado-Hernández, District Judge.

Daniel Grajales, his wife Wanda González, and their minor children ZGG, DGG, and CGG, represented by both Grajales and González, initiated this action against the Puerto Rico Ports Authority (the "Ports Authority") and other individuals in their personal and official capacities, seeking payment of damages for alleged political discrimination and retaliatory termination from employment under Federal and Puerto Rico law. Before the court is the Port Authority's "Motion for Summary Judgment on Grounds of Res Judicata" (Docket No. 401), which plaintiffs opposed (Docket No. 414). The Ports Authority replied (Docket No. 416), and plaintiffs sur-replied (Docket No. 420). For the reasons below, the motion for summary judgment is GRANTED.

**I.     BACKGROUND**

The original complaint was filed by Grajales, González and their conjugal partnership. (Docket No. 1). They claimed defendants had engaged in a campaign of discrimination and harassment against Grajales because of his political affiliation in violation of 42 U.S.C. §§ 1983 and 1985; Puerto Rico Law No. 100 of June 30, 1959; and Articles 1802 and 1803 of the Puerto Rico Civil Code. Id. They predicated jurisdiction over the federal claims on 28 U.S.C. §§ 1331,

1343, and over the state claims on 28 U.S.C. § 1367. Later, a First Amended Complaint, with only Grajales as the listed plaintiff, was filed adding claims under 20 U.S.C. § 1684 and 1701, 42 U.S.C. §§ 1981(c), 2000(c) and 12101; P.R. Laws Ann. tit. 1, § 501; Article 2, Sections 1, 4, 6, 8, 16 and 20 of the Puerto Rico Constitution; and the Ports Authority internal policies and guidelines (Docket No. 31). A Second Amended Complaint with no substantive modifications was filed thereafter, with Grajales, González and their conjugal partnership joined as plaintiffs (Docket No. 66). Defendants answered the complaint and amended complaints (Docket Nos. 13, 42, 43 and 67), and moved for judgment on the pleadings for failure to state a claim (Docket Nos. 82 and 88).

The court granted defendants' request, dismissing the federal claims with prejudice and the state claims without prejudice (Docket Nos. 110 and 112). The First Circuit reversed, concluding that plaintiffs had put forth a plausible claim for relief, and remanded the case for further proceedings. Grajales v. Puerto Rico Ports Authority, 682 F.3d 40 (1st Cir. 2012).[1] On remand, plaintiffs filed a Third Amended Complaint[2] adding claims under Puerto Rico Law No. 115 of December 20, 1991, incorporating substantively similar factual pleadings as the prior complaints but alleging, in addition, that Grajales was wrongfully terminated from his employment with the Ports Authority for retaliatory reasons (Docket No. 146).[3] Defendants answered (Docket No. 173),

---

[1] In its decision, the First Circuit stated that even though the District Court had dismissed with prejudice all of plaintiffs' federal claims, plaintiffs had only sought review of dismissal under Section 1983. On this ground, the remaining federal claims were considered abandoned, "not [to] be resurrected on remand." Grajales, 682 F.3d at p. 45, n.3.

[2] The Third Amended Complaint was filed by Grajales, Gonzalez, on their own behalf and on behalf of their minor children ZGG, DGG, and CGG (Docket No. 146). Grajales and González's conjugal partnership was not listed as a party. Id.

[3] Plaintiffs claim that Grajales was terminated from his employment with the Ports Authority in retaliation for having filed a workplace violation complaint with the Department of Labor and Human Resources of Puerto Rico (the "Department of Labor") (Docket No. 146 at 13-14), and argue that the termination violated his First Amendment rights of free speech. See Docket Nos. 146; 414 at p. 14-15.

and the parties entered into a stipulation of voluntary dismissal with prejudice as to the individually named defendants in their personal capacity (Docket No. 177), which the court granted (Docket No. 178). During trial, and out of the presence of the jury, the court granted defendants' motion under Fed. R. Civ. P. 50, dismissed the political discrimination claims (Docket No. 279), and instructed the jury to deliberate on the retaliation claims,[4] but the jury was unable to reach a verdict (Docket No. 282). Several efforts to settle the remaining claim were made, to no avail (Docket NoS. 289; 296; 298; 303; and 304).

Following several procedural incidents, the Ports Authority moved to dismiss the remaining claims on Eleventh Amendment grounds (Docket No. 346). The court granted defendants' request, holding that the Ports Authority was entitled to Eleventh Amendment immunity, and dismissed the federal and state retaliation claims without prejudice (Docket No. 360). The First Circuit reversed, concluding that the Ports Authority was not a governmental entity which shared such immunity with the Commonwealth of Puerto Rico. Grajales v. Puerto Rico Ports Authority, 831 F.3d 11 (1st Cir. 2016). Upon remand, the Ports Authority requested summary judgment dismissing plaintiffs' surviving retaliation claims on grounds of res judicata and collateral estoppel (Docket No. 401), which is now before the court.

## II.    SUMMARY JUDGMENT STANDARD

Pursuant to Fed. R. Civ. P. 56, summary judgment is appropriate when the record shows no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

---

[4] As the record confirms, following the Fed. R. Civ. P. 50 ruling, only the retaliation claim remains. See Docket Nos. 279 (the "[o]nly matter going to the jury will be the pending retaliation complaint"); 282 ("[t]he [c]ourt encouraged the parties to meet and try to settle the pending retaliation claim"); 289 at p. 1 ("the only issue remaining is Mr. Grajales' termination in retaliation"); and 413 at p. 1 (the court "inquired as to whether plaintiffs' only remaining claim is that for retaliation. Both attorneys answered in the affirmative").

law. A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party. A fact is material if it has the potential of determining the outcome of the litigation. Farmers Ins. Exch. v. RNK, Inc., 632 F.3d 777, 782 (1st Cir. 2011)(quoting Rodríguez-Rivera v. Federico Trilla Reg'l Hosp., 532 F.3d 28, 30 (1st Cir. 2008)).

In assessing a motion for summary judgment, the court must view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor. Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990) (citations omitted). There is no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, and no room for the judge to superimpose his own ideas of probability and likelihood. Greenburg v. P.R. Mar. Shipping Auth., 835 F.2d 932, 936 (1st Cir. 1987). The court may, however, safely ignore conclusory allegations, improbable inferences, and unsupported speculation. Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990) (citations omitted).

### III. UNCONTESTED FACTS[5]

#### A. Grajales' Employment History with the Ports Authority

In August 2008, Grajales commenced his work with the Ports Authority as an employee and internal safety supervisor. See Docket Nos. 402, "Statement of Uncontested Material Facts in Support of Motion for Summary Judgment" (the "SUMF"), SUMF at ¶¶ 4-6; 402-1.[6] In September 2008, upon request, he was transferred to the Rafael Hernández Airport in Aguadilla, Puerto Rico. SUMF at ¶ 7.

On December 1, 2008, the Ports Authority discovered that Grajales had failed to record his attendance properly, with the apparent intention of defrauding the Ports Authority. SUMF at ¶¶ 9-10. On May 8, 2009, the manager of the Rafael Hernández airport, Gonzalo González, reported an incident in which Grajales verbally attacked and provoked him. SUMF at ¶ 14. On May 26, 2009, Grajales was transferred to the Mercedita Airport in Ponce, Puerto Rico, and prohibited from

---

[5] Except otherwise noted, the facts included in this section are drawn from the parties' Local Rule 56 submissions (Docket Nos. 402, 415, and 417). Local Rule 56 is designed to "relieve the district court of any responsibility to ferret through the record to discern whether any material fact is genuinely in dispute." CMI Capital Market Inv. v. González-Toro, 520 F.3d 58, 62 (1st Cir. 2008). It requires a party moving for summary judgment to accompany its motion with a brief statement of facts, set forth in numbered paragraphs and supported by specific citations to the record, that the movant contends are uncontested and material. Local Rule 56(b) and (e). The opposing party must admit, deny, or qualify those facts, with record support, paragraph by paragraph. Id. 56(c) and (e). The opposing party may also present, in a separate section, additional facts, set forth in separate numbered paragraphs. Id. 56(c). While the district court may "forgive" a violation of Local Rule 56, litigants who ignore the rule do it "at their peril." Mariani-Colón v. Dep't of Homeland Sec. ex rel. Chertoff, 511 F.3d 216, 219 (1st Cir. 2007). Although the court reviewed every statement submitted by the parties, it will only consider and include in this Memorandum and Order those facts that are material for purposes of summary judgment as mandated by Fed. R. Civ. P. 56.

[6] Plaintiffs admit the majority of the facts (Docket No. 415, admitting statements 1-8; 11; 13-15; 19; 22-24; 26-30; 34; 36; 38; 41; 44-53; 57-59; 61-63; 66-67; 70-71; 75-79; 81-82; 84-85; 88-95; 101; 107-108; 112; 114; 119-121; 123-125; 127-134; 136-137; 140-142; 144; 147-148; 150; 152). Plaintiffs either qualify or deny the remaining statements, sometimes citing to an "Affidavit of Merits," sworn by Grajales under "penalty of oath" on December 17, 2017. See Docket Nos. 415; 415-1. However, plaintiffs' responses are argumentative and fail to cite to specific pages or paragraph of the affidavit. Thus, they are disregarded. Local Rule 56(c) and (e); Mariani-Colón, 511 F.3d at 219 (litigants who ignore Local Rule 56 do so "at their peril"). Although plaintiffs submitted a "Counterstatement of Undisputed Facts" with 5 additional proposed statements, they are irrelevant for the court's analysis (Docket No. 415-2).

visiting the Rafael Hernández Airport in light of the verbal assaults and provocations against González. SUMF at ¶¶ 16 and 20. On May 27, 2009, the acting general safety director, Javier Centeno, ordered Grajales to turn in his police-issued firearm, which he turned in on June 1, 2009. SUMF at ¶¶ 17 and 19. Grajales was suspended for 15 days without pay as a result of the incident with González. SUMF at ¶¶ 21-30.

In February 3, 2010, Grajales notified the Ports Authority that he suffered from arthritis and requested a transfer back to the Rafael Hernández Airport. SUMF at ¶ 34. On March 3, 2010, he had a car accident on his way the Mercedita Airport. SUMF at ¶ 35. On April 15, 2010, Grajales returned to his duties; however, he clocked in at the Rafael Hernández Airport (SUMF at ¶ 37), and was notified that he was not authorized to clock in at the Airport. SUMF at ¶ 40. The matter was referred to the Ports Authority's director of human resources, Gladys Meléndez, for corresponding action. SUMF at ¶ 41. On May 13, 2010, Meléndez notified Grajales that he had to request reasonable accommodation if he sought to be transferred back to the Rafael Hernández Airport. SUMF at ¶ 43.

On December 27 and 28, 2010, Grajales and Juan Del Rosario, the Ports Authority's director of the general safety office, exchanged emails where Grajales informed that he had assigned another security officer to another area, to which Del Rosario responded that he would soon provide a schedule. SUMF at ¶¶ 49-52. On December 30, 2010, Del Rosario notified to Grajales the schedule for the safety officers for the month of January, 2011. SUMF at ¶ 53. Grajales replied to Del Rosario questioning his capacity and knowledge regarding the responsibilities of his position, and stating that he thought it unbelievable that Del Rosario was in charge of designating the officer responsible for the identification cards. SUMF at ¶ 54.

On January 8, 2011, the runway lights at the Rafael Hernández Airport went off. SUMF at ¶ 58. That same day, the manager of the airport, Jorge Santiago, instructed safety officer Alberto Olmeda to call an electrician and follow his or her orders to repair the runway lights, which he did. SUMF at ¶¶ 59-60. On January 11, 2011, Grajales sent an email stating that he did not agree with the manner in which this incident was dealt with. SUMF at ¶ 62. On January 13, 2011, Carlos Tomassini, a supervisor of operations at Rafael Hernández Airport, filed a complaint with the Department of Labor requesting an investigation on the incident with the runway lights (SUMF at ¶ 63), and a Department of Labor investigator was assigned to his complaint. SUMF at ¶ 141.

On January 14, 2011, Grajales sent a communication to Jorge Santiago in a disrespectful tone, questioning his capacity and calling into question his truthfulness. SUMF ¶ at 64. On January 27, 2011, Juan Del Rosario called Grajales and other safety officers of Rafael Hernández Airport to a meeting, where Jorge Santiago was present. SUMF at ¶¶ 75-77. Grajales requested that the manager's secretary, Elba Jiménez, be present to take minutes of the meeting, but Del Rosario and Santiago denied his request. SUMF at ¶¶ 78-79. Grajales abandoned the meeting without authorization, disobeying the orders given by Del Rosario and Santiago. SUMF at ¶ 80. On January 28, 2011, Santiago sent a communication to Grajales, detailing the matters discussed during the meeting and urging him to observe the applicable rules of conduct. SUMF at ¶ 82. Del Rosario also sent a communication to Grajales informing that his behavior was unacceptable, showed clear disregard for authority, and violated the Ports Authority's personnel regulations. SUMF at ¶ 83.

Grajales replied to Santiago's communication stating that Santiago was lying and that he was not going to waste time giving explanations. SUMF at ¶ 84. Grajales also replied to Del Rosario's communication stating that Del Rosario and Santiago were lying. SUMF at ¶ 85. On

March 8, 2011, Grajales disobeyed instructions given to him by Santiago, regarding the designation of a parking space at the Rafael Hernández Airport for the Puerto Rico police. SUMF at ¶ 87. Santiago reprimanded Grajales and urged him to follow instructions. SUMF at ¶ 88. On March 9, 2011, Grajales sent a communication to Santiago, copying other Ports Authority officials, stating that the Rafael Hernández Airport was not Santiago's private property, and that he showed disregard for the work performed by the police. SUMF at ¶ 90. Santiago responded stating that Grajales had to follow instructions, to which Grajales replied that he was not going to waste time on futile discussions. SUMF at ¶¶ 91-92.

On March 14, 2011, the acting director of human resources, Bestabeth Guillani, issued a technical report regarding disciplinary measures previously requested against Grajales on February 15, 2011, which covers the March 10, 2011, incident regarding the airport parking space. SUMF at ¶¶ 86; 108-109. The report recommended Grajales' termination, considering that he continuously committed workplace violations, in spite of disciplinary measures (including a 15-day work suspension), and challenged the warnings of his supervisors. SUMF at ¶ 110.

On March 18, 2011, Grajales confronted and accused Santiago of violating the Rafael Hernandez Airport safety regulations by entering a controlled access area. SUMF at ¶ 94. As a result, Grajales deactivated Santiago's identification and access card, suspended a private security officer of the St. James Company who allowed Santiago entry into the controlled area, and ordered other St. James staff to not give access to Santiago again. SUMF at ¶ 95. Santiago's actions did not constitute a violation of safety regulation, and Grajales was not authorized to remove St. James safety officers. SUMF at ¶¶ 96-97. On that same day, Santiago informed Grajales that, per Del Rosario's instructions, he was ordered to reinstate the suspended St. James security officer. SUMF

at ¶ 101. Grajales' actions on March 18, 2011, disrupted the flight arrivals to the airport on that day. SUMF at ¶ 103.

On March 19, 2011, Grajales again questioned the instructions given by his superiors, Santiago and Del Rosario, and, in an email copied to other Ports Authority officers, accused them of ethical violations. SUMF at ¶ 105. On March 23, 2011, another investigative report was issued concerning disciplinary measures previously requested against Grajales on March 18, 2011, which covers the incident regarding the deactivation of Santiago's identification and access card and Grajales' intervention with the St. James officers. SUMF at ¶¶ 112 and 114. The report also recommended Grajales' termination, considering Grajales' numerous incidents. SUMF at ¶ 116.

On March 23, 2011, the executive director of the Ports Authority, Alberto Escudero, executed a letter of intent to terminate Grajales from employment with the Ports Authority and assigning him to another post while his case was decided. SUMF at ¶¶ 119-120. On March 24, 2011, Del Rosario ordered Grajales to report to the deputy safety manager at Luis Muñoz Marín Airport, but he reported for work on only one or two occasions. SUMF at ¶¶ 121-122. On March 30, 2011, Grajales requested an administrative hearing. SUMF at ¶ 123.

In the meantime, on March 31, 2011, Grajales filed a complaint with the Department of Labor, alleging that the Ports Authority was under the impression that Grajales had filed the complaint related to the runway lights incident, and that he was terminated in retaliation and for discriminatory reasons. SUMF at ¶ 124. A Department of Labor investigator was assigned to his complaint. SUMF at ¶ 127.

On April 4, 2011, Del Rosario delivered a travel order, ordering Grajales to report for work at Luis Muñoz Marín Airport from April 4 to June 30, 2011, but he reported for work on only one or two occasions. SUMF ¶¶ at 128-129. On April 8, 2011, the director of the Department of Labor

Manuel Sánchez, notified Escudero that Grajales had filed a discrimination complaint in said agency. SUMF at ¶ 130. On April 26, 2011, Escudero replied to Sánchez, informing that Grajales was terminated for insubordination and lack of respect towards his superiors and colleagues, which resulted in several disciplinary measures and his termination. SUMF at ¶¶ 132-133.

On April 26, 2011, Grajales' administrative hearing to review his termination was held, and on May 13, 2011, the administrative judge concluded that Grajales committed acts of insubordination by refusing to follow orders, engaged in disrespectful, insulting and humiliating behavior towards his superiors and colleagues, and that his conduct was inappropriate, hostile, disorderly and highly reproachable. SUMF at ¶¶ 134-137. Moreover, during the hearing, Grajales did not argue that he was terminated in retaliation for engaging in protected activity or for discriminatory reasons. SUMF at ¶ 138. On May 19, 2011, Escudero notified Grajales that he adopted the administrative judge's ruling, and terminated him from his position as internal safety supervisor. SUMF ¶ at 139.

The Department of Labor's investigator of Tomassini's complaint never met with any of the Ports Authority employees who recommended Grajales be terminated from his job. SUMF at ¶¶ 111; 118; 141-143. On June 17, 2011, Grajales filed an administrative appeal with the appellate board of the Ports Authority. SUMF at ¶ 147. Grajales did not argue in his appeal that he was terminated in retaliation for engaging in protected activity or for discriminatory reasons. SUMF at ¶ at 149. However, on July 25, 2012, before hearing on the merits, Grajales voluntarily dismissed his administrative appeal. SUMF at ¶ 151.[7]

---

[7] Moreover, while the administrative proceedings were pending, Grajales had already filed three different complaints in different courts alleging retaliation based on the same nucleus of facts. SUMF ¶ at 153.

### B. The State Court Case

On May 18, 2012, the Secretary of Labor and Human Resources of Puerto Rico (the "Secretary of Labor"), in representation and for the benefit of Grajales, filed a civil complaint (the "State Court Complaint") against the Ports Authority in the Puerto Rico Court of First Instance, Aguadilla Part, Secretary of Labor and Human Resources v. Puerto Rico Ports Authority, Case Number A AC2012-0079 (603) (the "State Court Case"). SUMF at ¶ 1; Docket No. 402-1 at p. 1. The Complaint alleged that while Grajales was performing his duties as an employee and security officer in the Rafael Hernández Airport in Aguadilla, he observed an incident involving the safety of another employee, which he reported to the Department of Labor (SUMF at ¶ 2; Docket No. 402-1 at p. 1); that following an investigation, the Department of Labor found that the Ports Authority had carried out practices which put the safety of its employees at risk and imposed fines (Docket No. 402-1 at p. 1); and that, after the Ports Authority discovered that Grajales had reported the foregoing incident, he was terminated from his employment in retaliation for his protected actions. Id.

On May 17, 2017, notified on May 23, 2017, the state court entered judgment on the merits under Puerto Rico Law Nos. 16 and 115 and dismissed the State Court Complaint with prejudice (the "State Court Judgment"). The state court concluded that Grajales' termination was justified in light of, among others, his acts of insubordination and consistent disrespectful conduct towards his supervisors; his violation of applicable policies regarding the recording of his work hours; his failure to follow orders by visiting the Rafael Hernández Airport after being prohibited from doing so; his suspension of another employee's identification card; and his communications with inflammatory and disrespectful language, which created a hostile work environment. (Docket No. 402-1 at pp. 22-23). The court further held that the evidence did not support a finding that Grajales

was terminated in retaliation for his involvement with the complaint filed with the Department of Labor, but rather clearly established his numerous incidents of insubordination. Id. at p. 24. The State Court Judgment is final and unappealable. SUMF at ¶ 3; Docket No. 402-1 at pp. 20-24.[8]

## IV.   DISCUSSION

"[F]ederal common law governs the claim-preclusive effect of a dismissal by a federal court sitting in diversity." Medina-Padilla v. U.S. Aviation Underwriters, Inc., 815 F.3d 83, 86 (1st Cir. 2016)(citation omitted). Generally, the rule under federal common law is "the law that would be applied by state courts in the State in which the federal diversity court sits," unless that rule would be "incompatible with federal interests." Id.(citing Semtek International Inc. v. Lockheed Martin Corp., 531 U.S. 497, 508-09 (2001). The parties have not argued that Puerto Rico law is incompatible with federal interests, thus the court applies Puerto Rico law. Medina-Padilla, 815 F.3d at 86 n.3 (citations omitted)(for purposes of res judicata, Puerto Rico is "the functional equivalent of a state"). Further, under "the full faith and credit statute, 28 U.S.C. § 1738, a state court judgment is entitled to the same preclusive effect in federal court as it would be given in the state in which it was rendered." García-Monagas v. De Arellano, 674 F.3d 45, 50 (1st Cir. 2012). The provision applies to Puerto Rico. See Boateng v. InterAmerican Univ., Inc., 210 F.3d 56, 61 (1st Cir. 2000)(Puerto Rico is treated as a state for purposes of full faith and credit).

The Puerto Rico res judicata statute applies if "between the case decided by the sentence and that in which the same is invoked, there [is] the most perfect identity between the things,

---

[8] Although the Ports Authority failed to include in its SUMF that the State Court Judgment is unappealable, it filed a motion to supplement the SUMF as to this fact and presented supporting evidence. See Docket Nos. 405; 405-1. In any event, the court takes judicial notice that no post-judgment motions nor appeals have been filed as to the State Court Case within the period provided by P.R. Laws Ann. tit. 32 App. V, R. 47, 52.2. See Kowalski v. Gagne, 914 F.2d 299, 305 (1st Cir. 1990)("[i]t is well-accepted that federal courts may take judicial notice of proceedings in other courts if those proceedings have relevance to the matters at hand").

causes, and persons of the litigants, and their capacity as such." P.R. Laws Ann. tit. 31, § 3343. The statute encompasses both claim preclusion (i.e. res judicata) and issue preclusion (i.e. collateral estoppel), "albeit with slightly different requirements for each." R.G. Fin. Corp. v. Vergara-Nuñez, 446 F.3d 178, 183 (1st Cir. 2006). Claim preclusion "binds parties from litigating or relitigating any claim that was or could have been litigated in a prior adjudication and prevents claim splitting," while issue preclusion "forecloses relitigation in a subsequent action of a fact essential for rendering a judgment in a prior action between the same parties, even when different causes of action are involved." García-Monagas, 674 F.3d at 50 (citing Gener-Villar v. Adcom Group, Inc., 417 F.3d 201, 205 (1st Cir. 2005); Texaco Puerto Rico, Inc. v. Medina, 834 F.2d 242, 246 (1st Cir. 1987)

### A. Res Judicata

To successfully assert claim preclusion under Puerto Rico law a party must establish that: "(i) there exists a prior judgment on the merits that is 'final and unappealable'; (ii) the prior and current actions share a perfect identity of both 'thing' and 'cause'; and (iii) the prior and current actions share a perfect identity of the parties and the capacities in which they acted." Medina-Padilla, 815 F.3d at 86 (citing García-Monagas, 674 F.3d at 51). Here, the three elements are met.

There is no dispute that the State Court Judgment is final, unappealable, and on the merits (SUMF at ¶ 3), and that the State Court Case and the present case share a perfect identity of "thing" and "cause." "Two actions share a perfect identity of 'thing' if they involve the same 'object or matter.'" Medina-Padilla, 815 F.3d at 86 (citations omitted); R.G. Fin. Corp., 446 F.3d 178, 183 (1st Cir. 2006) ("[t]wo actions share an identity of 'things' if a decision in the second action might function to contradict 'a right arisen or arising from, or a right affirmed by [a] prior decision'") (brackets in the original) (citation omitted). Additionally, "[t]wo actions share a perfect identity

of 'cause' if "they flow from the same principal ground or origin," or they "derive from a common nucleus of operative facts." Id. (citations omitted). Put simply, courts consider whether the two actions "are based on the same factual predicates." Id. In this instance, both the State Court Complaint and the Third Amended Complaint's surviving claims are based on the same alleged facts: Grajales was terminated from his employment with the Ports Authority in retaliation for his participation in the complaint filed with the Department of Labor. SUMF at ¶ 2; Docket Nos. 146 at pp. 13-14; 414 at p. 8.

Plaintiffs argue that, because the Secretary of Labor represented Grajales in the State Court Case, he only had standing to assert a reinstatement and lost wages action, rather than the First Amendment violations and Section 1983 damages claims asserted in the Third Amended Complaint. Docket No. 414 at pp. 9-10, 15-16. As support, they mention, in passing, Pérez v. Zayaz, 396 F.Supp.2d 90 (D.P.R. 2005).

In Pérez, the court held that res judicata did not apply to bar a subsequent federal action to vindicate a wrongfully terminated employee's constitutional rights, where those claims could not have been asserted in previous administrative proceedings before the Department of the Family Official Examiner's Office. Id. at 102-03. However, in Pérez, no hearing on the merits was held, and the adverse employment resolution was dismissed without prejudice, thus allowing the employee to later file a cause of action in Federal court based on the same facts. Id.

By contrast, the State Court Case was adjudicated on the merits on a motion for summary judgment. SUMF at ¶ 3. The fact that Grajales is now bringing suit for retaliation under a Section 1983 theory is of no consequence. See Medina-Padilla, 815 F.3d at 86 ("a mere difference in the legal theories on which two causes of action are grounded does not destroy the identity of thing or

cause that otherwise exists between two suits *arising out of a common nucleus of operative fact*." (citing R.G. Fin. Corp., 446 F.3d at 184 (emphasis added)).

Along the same line, "two actions share a perfect identity of the parties if either (1) the parties in the current action were also parties in the prior action or (2) the parties in the current action are in 'privity' with the parties in the prior action." Medina-Padilla, 815 F.3d at 86 (internal quotation marks and citations omitted). "[W]here one party acts for or stands in the place of another in relation to a particular subject matter, those parties are in privity for purposes of the Puerto Rico preclusion statute." R.G. Fin. Corp., 446 F.3d at 187.

Plaintiffs suggest that there is no identity of parties or privity because in the State Court Case, the Secretary of Labor was acting as the head of a Commonwealth agency "under the purview of the Government of Puerto Rico" (Docket No. 414 at p. 12). Notwithstanding, plaintiffs candidly concede that Grajales was able to defend and exercise "his rights in the Superior Court of Puerto Rico by way of the Secretary of Labor . . . which represented his interest in a special claim against the [d]efendant Puerto Rico Port[s] Authority" (Docket No. 414 at p. 8). He was the real party in interest in the State Court case, or, at a minimum, was in privity with the Secretary of Labor. R.G. Fin. Corp., 446 F.3d at 187.

Plaintiffs state, without much detail, that identity is not perfect because Grajales' minor children, ZGG, DGG, and CGG, were not present in the State Court Case. (Docket No. 414 at p. 10). The fact alone that Grajales' children, or his wife, were added as parties in the present case does not impede dismissal on res judicata grounds against Grajales, because their claims are derivative.[9] And, because Grajales and the Ports Authority were plaintiff and defendant in the

---

[9] Grajales' children and his wife, Wanda González, request relief under Article 1802 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, § 5141, Puerto Rico's general tort statute, for the damages they suffered as a result of the

Grajales, et al v. Puerto Rico Ports Authority, et al
Civil No. 09-2075 (PAD)
Opinion and Order
Page 16

State Court Case and the present case, respectively, the court finds that they also share identity in capacities.

### B. Collateral Estoppel

For collateral estoppel to apply, plaintiff and defendant "must have actually litigated the facts in question, and those facts must have been essential to a valid and final judgment in a prior action." Morón-Barradas v. Dep't of Educ. of Com. of Puerto Rico, 488 F.3d 472, 479 (1st Cir. 2007); see also Dowd v. Soc'y of St. Columbans, 861 F.2d 761, 764 (1st Cir. 1988)(summary judgment is a final judgment on the merits for purposes of res judicata). "[W]hen an issue 'essential to the prior judgment is actually litigated and determined by a valid and final judgment, the determination is conclusive in subsequent litigation among the parties.'" Muñiz Cortés v. Intermedics, Inc., 229 F.3d 12, 14 (1st Cir. 2000)(quoting Felix Davis v. Vieques Air Link, 892 F.2d 1122, 1124-25 (1st Cir. 1990)). "It is well-settled that a proceeding in a state court collaterally estops inconsistent arguments in a later federal action, including actions under § 1983." Baez-Cruz v. Municipality of Comerío, 140 F.3d 24, 28 (1st Cir. 1998).

Here, the question of whether the Ports Authority terminated Grajales in retaliation for his involvement with the complaint filed with the Department of Labor was litigated in the State Court Case via motion for summary judgment (Docket No. 402-1 at p. 2). Grajales, through the Secretary

---

alleged retaliation against Grajales. (Docket No. 146 at p. 17-19). The Puerto Rico Supreme Court permits relatives of a person who has been the victim of employment discrimination or retaliation to bring emotional damages claims pursuant to Article 1802 to be compensated for harm to them resulting from the discrimination or retaliation. Pagán-Colón v. Walgreens of San Patricio, Inc., 697 F.3d 1, 16 (1st Cir. 2012). However, such a cause of action is purely derivative and its viability is contingent on the success underlying discrimination or retaliation claim. Cabán Hernández, 486 F.3d at 12-13. Put simply, if the principal plaintiff's claim fails, so too do the relatives' derivative claims. Santana-Colón v. Houghton Mifflin Harcout Pub. Co., 81 F. Supp. 3d 129, 141 (D.P.R. 2014). Thus, because Grajales' discrimination claims have been dismissed, and his retaliation claims are precluded, Wanda González, ZGG, DGG, and CGG's claims also fail. See Albite v. Polytechnic Univ. of Puerto Rico, Inc., 5 F. Supp. 3d 191, 199 (D.P.R. 2014)(dismissing derivative claim pursuant to Fed. R. Civ. P. 56).

of Labor, objected and argued that there were material facts still in controversy. Id. However, the court ruled in favor of the Ports Authority. The facts regarding Grajales' employment history with the Ports Authority, his absences from work, his insubordinate and disrespectful conduct and actions towards his superiors, colleagues and other staff, his prior disciplinary measures, his disobedience to orders, his involvement in the runway lights incident and the subsequent complaint to the Department of Labor, and his own complaint with said Department, were all essential to the State Court Judgment that Grajales' termination was justified and was not in retaliation. And, as mentioned above, the State Court Judgment is final and unappealable. SUMF at ¶ 3.

Since the state court already ruled against Grajales on the issue of retaliation, the court is bound to the state court's factual determinations, and he is collaterally estopped from relitigating this issue even if he now seeks to do so under the veil of a Section 1983 action. Baez-Cruz, 140 F.3d 24, 28 (1st Cir. 1998)(affirming district court's ruling that plaintiffs were collaterally estopped from relitigating the issue of political discrimination in federal court where state's highest court previously affirmed that the plaintiffs' termination was not a result of political discrimination); Morón-Barradas, 488 F.3d at 479 (noting that a federal court is bound by the state court's factual determinations that defendant had not discriminated against plaintiff where parties litigated the issues essential to judgment); Valentín-Almeyda v. Municipality Of Aguadilla, 447 F.3d 85, 104 (1st Cir. 2006)(plaintiff in discrimination action collaterally estopped by factual findings of state court); Pignons S.A. de Mecanique v. Polaroid Corp., 701 F.2d 1, 2 (1st Cir. 1983) ("[c]ollateral estoppel may apply as validly to issues of fact as to issues of law").

Notwithstanding the bar on the relitigation of the retaliation claim, the Section 1983 claim would fail on the merits. Section 1983 "creates a private right of action through which plaintiffs may recover against state actors for constitutional violations." Goldstein v. Galvin, 719 F.3d 16,

24 (1st Cir. 2013)(citations omitted). "Claims of retaliation for the exercise of First Amendment rights are cognizable under § 1983." Powell v. Alexander, 391 F.3d 1, 16 (1st Cir. 2004); Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274 (1977). Thus, to establish a Section 1983 claim of retaliation for First Amendment activity, "a plaintiff must first show that his conduct was constitutionally protected, and that this conduct was a substantial factor or . . . a motivating factor for the defendant's retaliatory decision." Powell, 391 F.3d at 17 (internal quotation marks omitted)(citing Mt. Healthy, 429 U.S. at 287).

Plaintiffs allege that Grajales was terminated in retaliation for (1) his participation in the in the complaint filed with the Department of Labor regarding the runway lights incident of January 8, 2011; (2) his cooperation with the Department's subsequent investigation of said incident, in which Grajales offered sworn testimony to the Department's investigators (Docket No. 414 at pp. 13-16); (3) for filing his own, separate complaint with the Department in which he asserted that he was being retaliated against for voicing his concerns; and (4) because the Ports Authority believed that he had filed the complaint related to the runway lights incident. (Docket No. 146 at pp. 12-14). Regardless of whether any of the above constitutes protected speech under the First Amendment,[10] the fact remains that the issue of whether Grajales' allegedly protected conduct was a "substantial factor" or a "motivating factor" for the Ports Authority's termination decision, Powell, 391 F.3d at 17, has been conclusively answered in the negative. SUMF at ¶ 3; Docket No. 402-1. Simply put, his termination was justified considering, among others, his absences, insubordinate and disrespectful conduct, and failure to follow orders. In consequence, plaintiffs' Section 1983 claim of alleged retaliation for First Amendment activity fails.

---

[10] See Garcetti v. Ceballos, 547 U.S. 410 (2006)(speech by a public official on a matter of public concern is not protected under the First Amendment when made as part of official duties and in the course of employment).

### C. Public Policy Exception

Puerto Rico law recognizes a "public policy" exception to the doctrine res judicata. García-Monagas, 674 F.3d at 55; Barreto-Rosa v. Varona-Méndez, 470 F.3d 42, 48 (1st Cir.2006). Plaintiffs vaguely argue that the public policy exception should apply because the court's application of res judicata would defeat the ends of justice. In their view, the State Court Complaint had merit and the State Court Judgment was wrongfully based on hearsay evidence (Docket No. 414 at p. 12-13). The court fails to see any injustice. If Grajales strongly believed in the merits of the State Court Case and disagreed with its Judgment, he should have ensured that post-judgment or appellate relief was pursued.

Plaintiffs further argue that the Ports Authority's acts, which allegedly violated Grajales' free speech regarding a matter of public concern, could not be asserted in the State Court Case. Id. at p. 13-15. It is irrelevant Grajales could not assert First Amendment claims in the State Court Case, because factual conclusions are given collateral estoppel effect regardless of inability of the lower court to entertain a plaintiff's federal constitutional claims. Baez-Cruz, 140 F.3d at 31. All in all, plaintiffs have not convincingly shown that they are entitled to an exception from res judicata. García-Monagas, 674 F.3d at 56.

### V. CONCLUSION

In view of the foregoing, the motion for summary judgment (Docket No. 401) is GRANTED. The case is dismissed with prejudice.[11] Judgment shall be entered accordingly.

---

[11] Plaintiffs had alleged violations of Articles 1802 and 1803 of the Puerto Rico Civil Code; Puerto Rico Law Nos. 100 and 115; P.R. Laws Ann. tit. 1, § 501; Article 2, Sections 1, 4, 6, 8, 16 and 20 of the Puerto Rico Constitution; and the Ports Authority internal policies and guidelines, based on the same factual circumstances underlying his retaliation claim (Docket Nos. 146 and 385). Nevertheless, they represented that the only remaining claim was the retaliation claim. See Note 4. The state court's final and unappealable factual findings demonstrate just cause for dismissal, precluding federal and state claims predicated on those facts.

**SO ORDERED.**

In San Juan, Puerto Rico, this 30th day of March, 2018.

<u>s/Pedro A. Delgado Hernández</u>
PEDRO A. DELGADO HERNÁNDEZ
United States District Judge
